# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 1:06CR00004 |
| v. ) | **OPINION SETTING FORTH** |
| ) | **REASONS FOR SENTENCE** |
| **RONALD BLAIR TESTERMAN, SR.**, ) | |
| ) | By: James P. Jones |
| Defendant. ) | Chief United States District Judge |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; David L. Scyphers, Scyphers & Austin, P.C., Abingdon, Virginia, for Defendant.*

For the reasons set forth in this opinion, I find it appropriate to sentence the defendant to a sentence below the advisory guideline range.

The defendant, Ronald Blair Testerman, Sr., was convicted by a jury in this court of wilfully engaging in the business of dealing in firearms without a license, 18 U.S.C.A. § 922(a)(1))(A) (West 2000). Based on the Presentence Investigation Report ("PSR"), I determined that Testerman had a Total Offense Level of 18 and a Criminal History Category of I, resulting in an advisory guideline range of 27 to 33 months imprisonment under the Sentencing Guidelines. I determined to sentence Testerman to three years probation, including four months of home detention and a

fine of $1,000. Since this sentence constitutes a variance from the Sentencing Guidelines, I set forth in this Opinion the reasons for the sentence.

I find the following facts as presented at trial and in the PSR concerning the defendant and his criminal conduct.

In 2005, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") decided to target certain flea markets in rural Southwest Virginia where large numbers of persons were buying, selling, and trading firearms. Testerman is one of several persons prosecuted for engaging in the business of dealing in firearms without a license as a result of this effort.

On May 25, 2005, a confidential informant for the ATF traveled to a flea market in Chilhowie, Virginia, and obtained a business card from Testerman with the name of "Testerman Enterprises" and the inscription "New and Used Guns." On June 1, 2005, the informant purchased a .38-caliber pistol from Testerman at the same flea market. Testerman told the informant that he also sold firearms at a flea market in Tazewell, Virginia. Later, on July 6, July 13, and July 20, 2005, an ATF agent acting in an undercover capacity purchased on each day a .22 pistol from Testerman at the Chilhowie flea market.

A search warrant was obtained for Testerman's residence and on August 24, 2005, ATF agents seized 72 firearms, mainly shotguns and rifles, from his pickup truck and his home.

The defendant was charged with four counts of selling a firearm to a resident of another state, 18 U.S.C.A. § 922(a)(5) (West 2000) (Counts One through Four), as well as one count of engaging in the business of dealing in firearms without a license (Count Five). He pleaded not guilty and at trial the jury acquitted him of all counts except Count Five. Following the jury's guilty verdict as to that count, the jury returned a special verdict directing that the firearms seized by the government be forfeited because they were involved in the offense.

Testerman was born on January 26, 1928, and thus will be 79 years old on his upcoming birthday. He quit school following the seventh grade and began working. At the age of 18, he enlisted in the United States Army. He was honorably discharged after World War II and immediately secured employment at a construction company, where he worked for the next 44 years. Until his involvement in the current offense, the defendant had never been involved in the criminal justice system. He was married for 43 years until his wife passed away in 1998. Since that time, he has lived alone. He has two grown children who do not have any history of criminal

involvement. He is active in his church and has a good reputation in his small rural community.

At trial, Testerman testified and did not dispute the firearms sales. He asserted that he was not in the business of dealing in firearms, but traded guns as a hobby and as a collector. He admitted that he had used a friend's federal firearms license number to purchase guns directly from wholesalers.

While the Sentencing Guidelines are now not mandatory, *United States v. Booker*, 543 U.S. 220, 226-27 (2005), I am obligated to "consult those Guidelines and take them into account," along with the sentencing goals set forth in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2004). *Id.* at 264. The Fourth Circuit has mandated the following process that a district court in this circuit must follow in order to comply with *Booker*:

> First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range. Next, the court must determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence within statutory limits that does serve those factors. In doing so, the district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law . . . . If an appropriate basis for departure exists, the district court may depart. If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence (a "variance sentence"). The district court must articulate the reasons for the sentence imposed, particularly explaining any departure or variance from the guideline range. The explanation of a variance sentence must be tied to the factors set forth in § 3553(a) and

> must be accompanied by findings of fact as necessary. The district court
> need not discuss each factor set forth in § 3553(a) in checklist fashion;
> it is enough to calculate the range accurately and explain why (if the
> sentence lies outside it) this defendant deserves more or less.

*United States v. Moreland,* 437 F.3d 424, 432 (4th Cir. 2006) (alterations, internal quotation marks, and citations omitted).

Under § 3553(a), I must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as

> the need for the sentence imposed— (A) to reflect the seriousness of the
> offense, to promote respect for the law, and to provide just punishment
> for the offense; (B) to afford adequate deterrence to criminal conduct; (C)
> to protect the public from further crimes of the defendant; and (D) to
> provide the defendant with needed educational or vocational training,
> medical care, or other correctional treatment in the most effective
> manner.

18 U.S.C.A. § 3553(a). The further a sentence "diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." *Moreland*, 437 F.3d at 434. Nevertheless, "'a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2).'" *United States v. Davenport*, 445 F.3d 366, 370 (4th Cir. 2006) (quoting *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)).

In this case, the relevant statutory factors convince me to impose a sentence below the guideline range.

-5-

Age cannot ordinarily be used as the basis for a downward departure under the Sentencing Guidelines, unless the defendant is both "elderly and infirm." U.S. Sentencing Guidelines Manual § 5H1.1 (2005); *see United States v. Hillyer*, No. 05-4295, 2006 WL 2129845, at *5 (4th Cir. Aug. 1, 2006). While Testerman has a number of age-related health problems, he has lived alone and cannot be considered "infirm."

While a downward departure authorized by the guidelines is not available, I find that a nonguideline sentence will adequately deter Testerman and others from similar conduct based on his advanced age, his previous law-abiding life, and the fact that he has not only lost his entire firearms collection to forfeiture, but will never again be able to possess a firearm. His adjudication as a felon, after a long lifetime of strict adherence to society's norms, along with the obligations of probation, home detention, and a fine, are of themselves just punishment. No proper purpose would be served by requiring Testerman to go to prison.

For these reasons, I find it appropriate to sentence Testerman to a sentence below the advisory guideline range.

DATED: August 31, 2006

/s/ JAMES P. JONES
Chief United States District Judge